NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RICHARD ZINN, Individually and as
Sole Shareholder of Excalibur Bagel
& Bakery Equipment, Inc., and
EXCALIBUR BAGEL & BAKERY EQUIPMENT,
INC., a New Jersey Corporation,

              Plaintiffs,

v.

KARIN SERUGA, Individually and as
Sole Shareholder of Excellent Bakery
Equipment Co., and EXCELLENT BAKERY
EQUIPMENT CO., a New Jersey
Corporation,

              Defendants.

05-cv-3572 (WGB)

**O P I N I O N**

Dennis G. Harraka, Esq.
FERRARA, TURITZ, HARRAKA & GOLDBERG, P.C.
505 Main Street
Hackensack, New Jersey 07601

Michael L. Lovitz
Jennifer Fraser
CONNOLLY BOVE LODGE & HUTZ LLP
P.O. Box 2207
Wilmington, DE 19899

      Attorneys for Defendants

Richard A. Joel, Esq.
Lori E. Kolin, Esq.
JOEL & JOEL, LP
496 Kinderkamack Road
Oradell, New Jersey 07649

      Attorneys for Plaintiffs

**BASSLER, SENIOR DISTRICT JUDGE:**

Plaintiff and Defendant are in the business of manufacturing, servicing, and selling bagel and bakery equipment and parts. (Compl. at 8). Plaintiff seeks, amongst other things, cancellation of the ARTOFEX trademark and a declaratory judgment that the trademark purportedly assigned to Defendant Seruga is invalid. Karin Seruga and EXCELLENT BAKERY EQUIPMENT CO.,("Seruga" or "EXCELLENT" or collectively "Defendants"), move to dismiss the Complaint brought by Richard Zinn and EXCALIBUR BAGEL & BAKERY EQUIPMENT, INC., ("Zinn" or "EXCALIBUR" or collectively "Plaintiffs").

The Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 and supplemental jurisdiction under 28 U.S.C.A. § 1367. Venue is proper pursuant to 28 U.S.C.A. § 1391(a).

**I.  PROCEDURAL AND FACTUAL HISTORY**[1]

Zinn and Seruga were formerly married, and during their marriage they were joint owners of two businesses, Excelsior, and Banta, which sold and manufactured bakery equipment and parts. (Pls. Mem. of Law in Opp'n to Defs. Mot. to Dismiss at 7). Both Banta and Excelsior were licensed distributors of Artofex products. Id. The parties were divorced on April 24, 1997, and

---

[1]Any disputed facts are construed in the light most favorable to Plaintiffs, as is required in a motion to dismiss under Fed. R. Civ. P. No. 12(b). Video Pipeline, Inc. v. Buena Vista Entm't, Inc., 210 F. Supp. 2d 552, 556 (D.N.J. 2002).

2

on that same date they entered into a Corporate Settlement Agreement ("Settlement Agreement"), which governed the parties' rights regarding use of the ARTOFEX mark and provided that "each party shall be entitled to purchase, rehabilitate and sell Artofex equipment . . . and both parties can advertise that they are capable of servicing Artofex equipment as long as such statements are true." (Compl. at 35).  Banta and Excelsior were dissolved and the parties formed new businesses; Zinn formed Excalibur Bagel & Bakery Equipment, Inc. ("Excalibur"), and Seruga established Excellent Bakery Equipment Co. ("Excellent"). Both companies sell products displaying the ARTOFEX trademark. Defendant Seruga claims the mark was exclusively assigned to her.

**A. Assignments of the ARTOFEX Mark**

According to the Trademark Assignment Abstract of Title ("Abstract of Title"), the ARTOFEX trademark was first registered by F. Aeschbach S.A., a Swiss company, with the United States Patent and Trademark Office ("USPTO"), on August 16, 1927, under registration number 231276 ("231276").  F. Aeschbach assigned the ARTOFEX mark, along with "the entire interest and goodwill" to Artofex AG, a joint stock Swiss company (first assignment)."[2]

_____

[2]A trademark is a "symbol of the goodwill" connected with the business or product it represents which holds no significance without that goodwill; a "purported assignment of a trademark without goodwill" is invalid and is prohibited as an assignment in gross.  Interstate Net Bank v. Netb@nk, Inc., 348 F. Supp. 2d 340, 348-49 (D.N.J. 2004).

The second assignment was made by Artofex AG to Artofex Engineering Works Ltd., a corporation with United Kingdom citizenship, but this assignment did not include the "goodwill" of the ARTOFEX mark.

In the third assignment, F. Aeschbach S.A., as an individual with U.S. citizenship, transferred the mark on October 15, 2003, to Seruga under U.S. Registration No. 231,276.[3] Lastly, F. Aeschbach, S.A., as a Joint Stock Company with Swiss citizenship, assigned the trademark to Seruga on April 15, 2004. Like the second assignment, neither the third or fourth assignments by F. Aeschbach, S.A. to Seruga includes the "goodwill" of the ARTOFEX trademark. Seruga claims exclusive rights to the ARTOFEX mark based on the third and fourth assignments.[4] On September 17, 2003, Seruga filed a use-based application for the mark ARTOFEX, Application No. 76/545,438 ("438"). The '438 application is currently pending at the USPTO.[5]

---

[3]Plaintiffs note, however, that after the second assignment, Artofex Engineering Works Ltd. never transferred the ARTOFEX mark back to F. Aeschbach, S.A. (the first assignee).

[4]Defendants assert that the Settlement Agreement only granted each party the right to use the ARTOFEX trademark as licensees, and that Seruga negotiated and paid valuable consideration for an assignment of rights to the ARTOFEX mark after the parties divorced; therefore Seruga has acquired exclusive ownership of the mark as assignee.

[5]It is unclear why there were two assignments by F. Aeschbach, S.A. to Seruga. Seruga's filing of the new use based application for the ARTOFEX trademark, however, supports Plaintiffs' argument that the two F. Aeschbach, S.A. assignments may have been defective. In addition, Seruga concedes that there

4

### B. Communication Between the Parties

In December 2003, Defendants' attorneys sent Plaintiffs two letters concerning use of the ARTOFEX trademark.  The first letter, dated December 8, 2003, was actually addressed to Artofex Machine LLC, but was sent to the address of Excalibur Bakery. (Compl. at 21).  This letter directs the recipient to "immediately cease and desist" any further use of the ARTOFEX trademark, which is being done "in violation of my client's rights under Federal law," and "reserves [Seruga's] right to sue for profits . . . and any other damages to which she is entitled by law."  (Compl. at 21-22).  Plaintiffs' attorney then sent a letter to Defendants on December 23, 2003 denying any violation of the ARTOFEX trademark.  (Pls. Mem. of Law in Opp'n to Defs. Mot. to Dismiss at 32).  In response, Defendants sent a second letter, dated December 31, 2003, to Plaintiffs' attorney, which further charged Plaintiffs with "trademark dilution."  (Compl at 26).  It also stated that "[r]egardless of any rights which may exist with respect to the Corporate Settlement Agreement between the parties," it does not give "your client the right to use the trademark 'Artofex' in conjunction with counterfeit parts."  The letter concludes: "We therefore stand by our previous letter and caution your client accordingly."  (Id.)

In April 2004, Defendants filed a suit against Plaintiffs in

_____

may have been errors in these assignments.  (Defs. Reply Br. at 6, n.1).

state court, claiming that Plaintiffs breached the Settlement Agreement by using the ARTOFEX trademark inappropriately, and that Plaintiffs had interfered with Defendants' business activities.  That case is still pending in the New Jersey Superior Court.[6]

Plaintiffs then filed an eight count complaint on July 18, 2005.  Although Plaintiffs' Complaint is not well articulated, the Court concludes that in Counts I and II Plaintiffs seek cancellation of the trademark claiming it was abandoned and obtained through fraud.[7]  Plaintiffs also seek a declaratory judgment under 28 U.S.C. § 2201(a) to invalidate the ARTOFEX trademark in Counts III and V.  Count IV alleges Defendants breached the Corporate Settlement Agreement by harassing Plaintiffs regarding the ARTOFEX trademark.  Counts VI through VIII of the Complaint also allege that Defendants are liable for "unfair competition" under 15 U.S.C. § 1125, for attempting to obtain a registration through fraud under 15 U.S.C. § 1120, and

---

[6]The pending litigation is in New Jersey Superior Court, Law Division, Docket No. BER-L-6432-04 (2004).

[7]The actual claims set forth in Plaintiffs' Complaint are: Defendant's Ownership of the Mark Artofex is Fraudulent (Count 1); Defendant Procured Ownership by False Means and the Trademark is Invalid (Count II); Plaintiffs Request Judgment Declaring the Mark Invalid (Count III); Breach of Contract (Count IV); Plaintiffs Deserve Judgment Declaring the Mark Artofex Invalid (Count V); Defendant is Attempting to Obtain Registration Through Fraud (Count VI); Defendants Engaged in Unfair Competition to Injure Plaintiffs, 15 U.S.C. § 1125 (Count VII); Product Disparagement (Count VIII).

for product disparagement.  Plaintiffs further seek both monetary
and injunctive relief.

Defendants seek to dismiss the Complaint under Fed. R. Civ.
P. 12(b).  Defendants argue that under 12(b)(1), the court lacks
jurisdiction over the subject matter.  Defendants also assert
that Plaintiffs lack standing to bring this action.  Defendants
further contend that under 12(b)(6), Plaintiffs have failed to
state any claim for which relief can be granted, and specifically
under 9(b), Plaintiffs have failed to plead fraud with
particularity.

## II. ANALYSIS

### A. Standing

To establish standing a party must show 1)she has suffered
an "injury-in-fact," 2)the injury must be fairly traceable to the
defendant's conduct, and 3)it must be fairly likely, rather than
merely speculative, that the injury may be redressed by a
positive decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555,
560-61 (1992).  With a motion to dismiss, the plaintiff's general
factual allegations concerning injury caused by the defendant's
conduct may suffice to establish constitutional standing.
Danvers, 186 F. Supp. 2d at 535.

To satisfy the "injury-in-fact" requirement, "the party
seeking review must be himself among the injured."  Lujan, 504
U.S. at 563.  The injury required to invoke Article III standing

can be threatened rather than actual.  Warth v. Seldin, 422 U.S. 490, 499 (1975); see also Employers Assoc. Of New Jersey v. State of New Jersey, 601 F.Supp. 232, 238 (D.N.J. 1985) ("[t]hreatened injury is sufficient for standing . . . for preventative relief without compelling litigants to await the consummation of threatened injury") (quoting Pacific Gas & Electric v. State Energy Resources Conservation and Dev. Comm., 461 U.S. 190, 200 (1983).  Nevertheless, standing has been consistently denied by federal courts "when claimed anticipatory injury has not been shown to be more than uncertain potentiality." Prestage Farms, Inc. v. Bd. of Supervisors of Noxubee Conty Mississippi, 205 F.3d 265, 268 (5th Cir. 2000).

Plaintiffs Zinn and Excalibur must each establish independent standing to bring this action.  A corporate plaintiff who suffers economic injury has standing to maintain an action. Ogden Projects v. New Morgan Landfill Co., 911 F. Supp. 863, 870-71 (E.D.Pa 1996)(the court held that the corporate plaintiffs had established standing by showing they suffered economic injury because they were competitively disadvantaged in relation to defendants).  Plaintiff Excalibur's threatened loss of business sales is sufficient to establish an injury in fact that seems likely based on Defendants' past conduct, which gives Excalibur standing to bring the current action.  See Lujan, 504 U.S. at

563.[8]

Even though Zinn is the sole shareholder of EXCALIBUR, he must allege an injury that is independent of the corporation. See Borkowski v. Fraternal Order of Police, 155 F.R.D. 105, 113 (E.D.Pa. 1994)("in the absence of a direct individual injury, a corporate shareholder . . . lacks standing to sue for an injury to the corporation"). Defendants argue that Zinn "has not clarified how [he] is injured by Seruga's actions or how [he] will be directly affected by the complained-of-activity." (Defs. Br. at 19). Zinn argues that he has standing because as long as Defendants intend to keep Plaintiffs from using the mark, as Defendants' letters and action in state court suggest, both he and EXCALIBUR will suffer a loss in business sales. (Pls. Mem. of Law in Opp'n to Defs. Mot. to Dismiss at 10). Zinn also asserts that he and EXCALIBUR have suffered monetary damages. (Compl. at 12, ¶ 70). Finally, Zinn claims a right to use the ARTOFEX mark which is independent of Excalibur, and Zinn is named separately as a defendant in the state court action for his alleged improper use of the ARTOFEX mark.[9] Therefore, Zinn has a threatened injury apart from the corporation. Plaintiffs Zinn and Excalibur, therefore, have separate standing.

---

[8]Defendants' website also poses a threat of lost sales for Plaintiffs because Defendants suggest Plaintiffs are improperly using the mark.

[9]See n.16 supra.

9

## B. Lack of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1)

The Third Circuit treats a motion to dismiss under 12(b)(1) as "either a facial or a factual challenge" to the court's jurisdiction over the subject matter.  With a facial attack, the court will consider the allegations in the complaint "in the light most favorable to the plaintiff." <u>Danvers Motor Co., Inc. v. Ford Motor Co.</u>, 186 F. Supp. 2d 530, 534 (D.N.J. 2002)(citations and internal quotations omitted).  Different standards are employed with a factual challenge, which contends that the court lacks subject matter jurisdiction irrespective of what the complaint alleges.  With a factual challenge, the court may then consider evidence not contained in the pleadings and no presumption of truthfulness is granted to plaintiff's allegations.  <u>Id.</u>  Since Defendants limit their arguments to the facts alleged in Plaintiffs' Complaint, the Court will treat this as a facial challenge to its subject matter jurisdiction, and will construe allegations in the light most favorable to Plaintiffs.[10]

To grant a motion to dismiss under 12(b)(1), a district court must determine if it has subject matter jurisdiction.  This is established if the constitutional prerequisite of an actual case-or-controversy has been met; which encompasses the ripeness

_____

[10]Defendants "agree that the Court'must accept as true' all factual allegations" in Plaintiffs' Complaint.  (Defs. Rep. Br. at 13)(citation omitted).

of the action, and whether a litigant has standing.  Danvers
Motor Co., Inc. v. Ford Motor Co., 186 F. Supp. 2d 530, 535
(D.N.J. 2002) (discussing the constitutional requirement under
U.S. Const. Art. III § 2).

### 1) Ripeness

Defendants maintain that "the case is not ripe for
declaratory judgment in Counts III and V because the parties are
not adverse and there has been no action to create reasonable
apprehension of an infringement suit." (Defs. Br. at 9).  The
ripeness doctrine focuses on when an action may be brought by a
proper party.  The doctrine functions to prevent courts from
being entangled in abstract disagreements.  Travelers Ins. Co. v.
Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995) (citation omitted).
The test of whether an action is ripe has been refined in the
declaratory judgment context because an action may be brought
"before an 'accomplished' injury is established." Armstrong World
Industries, Inc., 961 F.2d 405, 411 (3d Cir. 1992)(quoting Step-
Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir.
1990).

### Declaratory Judgment in Counts III and V

A court may only exercise jurisdiction pursuant to the
Declaratory Judgment Act if an actual controversy which is ripe
for disposition is before the court.  Travelers Ins. Co., 72 F.3d
at 1153-54.  A litigant need not await actual harm to seek a

11

declaratory judgment, provided the probability of future harm is real and substantial.  <u>Id.</u> at 1154.  The Third Circuit considers three basic principles in determining whether an action is ripe for declaratory relief: 1)the adversity of interest between the parties, 2)whether the judicial judgment will be conclusive, and 3)the practical utility or help of that judgment.  <u>Step-Saver Data Sys.</u>, 912 F.2d at 647.

### a.  Adversity of Interests

Parties have adverse interests if "harm will result if the declaratory judgment is not entered."  <u>Travelers Ins. Co.</u>, 72 F.3d at 1154.  In a declaratory judgment action, adversity may be shown by either an express threat of litigation, or an action which creates reasonable apprehension that a party will face an infringement suit.  <u>Simmonds Aerocessories v. Elastic Stop Nut Corp. of America</u>, 257 F.2d 485, 489-91 (3d Cir. 1958).

The parties disagree about the significance of their December 2003 correspondence. Defendants assert that the December 2003 letters sent by Seruga's attorney concerning use of the ARTOFEX trademark are addressed to Artofex Machine LLC and not to Plaintiffs.  Therefore, Defendants argue that since the relevant party is not part of this action and is not connected to Plaintiffs, there is no basis for Plaintiffs to be in reasonable apprehension of suit.  (<u>Id.</u> at 10).

The Court does not find Defendants' argument persuasive. The first letter sent by Defendants may have been addressed to

Artofex Machine, however, it was sent to Plaintiffs' address. This letter states that the ARTOFEX mark is being used in violation of Seruga's rights under federal law, and orders that such use immediately cease; it also reserves "[Seruga's] right to sue for profits made by you for the improper use of the mark as well as any other damages to which she is entitled by law." (Compl. at 21-22).

Furthermore, the second letter was addressed to Zinn's attorney, Suzanne Frankland, not to Artofex Machine LLC, and was sent in response to Ms. Frankland's correspondence of December 23, 2003. (Id. at 26). Defendants deny that the second letter threatens suit and argue that it only reminds Artofex Machine that it has no right to use the Artofex mark on counterfeit products and that significant time has elapsed since these letters were sent without any further activity. (Defs. Br. at 11). Plaintiffs note that Defendants' second letter states that Defendants "stand by" their previous letter and warns Plaintiffs' attorney to "caution your client accordingly." (Pls. Mem. in Opp'n to Defs. Mot. to Dismiss at 13). This letter further adds that Plaintiffs' use of the ARTOFEX name "in conjunction with his sale of unauthorized parts constitutes trademark dilution which, in an (sic) of itself, is actionable." Id.

Although Defendants did not make an express threat concerning Plaintiffs' use of the ARTOFEX mark, the language of

13

the letters would create a basis for a reasonable apprehension of litigation.  In <u>Simmonds</u>, the court found defendant's warning letter about plaintiff's use of a trademark was an implicit threat and it was not necessary that an "actual threat of litigation be shown."  257 F.2d at 490.  The court held that the parties had adverse interests and that the plaintiff had asserted an "actual controversy within the meaning of the Declaratory Judgment Act."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Performance Ind. Inc., v. Morton Int., Inc.</u>, 22 U.S.P.Q.2D (BNA) 1632, 6 (1992)(in declaratory judgment actions concerning trademarks and patents, an actual controversy is shown if the defendant's conduct creates a reasonable apprehension in plaintiff of being sued for infringement)(citations omitted).

Plaintiffs also point to Defendants' website as creating a reasonable apprehension of litigation.  Specifically, the website contains statements that Seruga owns the ARTOFEX trademark, and that "[t]wo companies cannot have exclusive rights" to represent Artofex products, and one of the companies is lying.  (Compl. at 37).  Defendants deny that the accusations on their website are directed at Plaintiffs, and are only addressed to "the other company."  Defendants do not explain, however, who the other company might be if not Plaintiffs.

Finally, Defendants assert that the action they have brought against Plaintiffs in state court for breach of the Settlement

14

Agreement "belies any claim of reasonable apprehension" on Plaintiffs' part because the parties are already involved in litigation over the same issues.[11]  This argument lacks merit. The very fact that Defendants are suing Plaintiffs underscores Plaintiffs' reasonable apprehension of suit.[12]

### b.  Whether The Judicial Judgment Will Be Conclusive

A declaratory judgment is conclusive if the legal status of the parties will be clarified or changed.  Step-Saver Data Sys., 912 F.2d at 648. Plaintiffs seek a declaratory judgment that Seruga's ownership of the ARTOFEX mark (Reg. 231276) is invalid and was fraudulently obtained.

Plaintiffs allege that the ARTOFEX mark is invalid because the second assignment in 1995 to ARTOFEX Engineering Works (United Kingdom), was made without the requisite "goodwill" of the business and was therefore a "naked assignment." (Compl. at 6). Defendants acknowledge errors in the chain of assignments of the mark but maintain these errors are correctable by filing an Amended or Corrective Assignment with the USPTO. (Defs. Rep. Br.

---

[11]The state court action is being brought against both Zinn as an individual, and against EXCALIBUR BAGEL & BAKERY EQUIPMENT CO.  (Compl. at 8, ¶ 42).

[12]Although Defendants currently are suing Plaintiffs in state court for breaching the Settlement Agreement by using the ARTOFEX mark on counterfeit parts, Defendants' conduct and letters sent December 2003 evidence Plaintiffs' reasonable apprehension that Defendants could subsequently sue Plaintiffs for trademark infringement.  Id.

at 6-7, 16).[13]  All three of the latter assignments, however, were made without the "goodwill" of the mark, and there is no indication in the Abstract of Title that any of the respective assignees took steps to rectify this.  (Comp. at 18).[14]

In Interstate Net Bank, 348 F. Supp. at 348-49, the court held that an assignment of a trademark without goodwill is "invalid" and is "prohibited as an assignment in gross."  If the Court finds that Seruga's assignment was made without the requisite goodwill, the trademark will be invalid.  Therefore the right of Seruga to use the trademark assignment to prohibit Zinn from using the mark is conclusively determined.

Nevertheless, Defendants contend that a declaratory judgment would not be determinative because even if the federal trademark registration is invalid, Seruga still maintains superior common law rights in the ARTOFEX mark and could bring an infringement suit on this basis.  (Defs. Br. at 16).  Defendants have not

---

[13]Defendants also argue that Europe does not require the assignment of goodwill.  (Defs. Br. at 26, n.5).  For the trademark to be valid in the United states, however, goodwill must be transferred with interest for the trademark to be valid.  See supra n.2 quoting Interstate Net Bank, 348 F. Supp. 2d at 348-49 (A trademark is a "symbol of the goodwill" connected with the business or product it represents which holds no significance without that goodwill).

[14]Defendants further submitted supplemental documents on June 7, 2006 purportedly correcting these errors.  These documents go to the merits of the validity of the current trademark and do not affect Plaintiffs' ability to seek a declaratory judgment regarding that validity.

demonstrated, however, that they have superior common law rights because, based on Plaintiffs' Complaint, Defendants and Plaintiffs both used the ARTOFEX mark as joint owners of the Excelsior and Banta businesses.  (Pls. Mem. in Opp'n to Defs.' Br. at 16).

Regardless of whether Defendants can establish that they have common law rights, a declaratory judgment determining the validity of the mark will conclusively establish whether Defendants can bring an infringement action on the basis that Seruga was assigned the mark.[15]

### c.  The Practical Utility or Help of That Judgment

A declaratory judgment must be of some utility and help to the parties.  <u>Travelers Ins. Co.</u>, 72 F.3d at 1155.  The Declaratory Judgment Act was enacted to "clarify legal relationships," in order that parties might "make responsible decisions about the future."  <u>Id.</u>  Defendants claim that a declaratory judgment is not appropriate because the court cannot grant effective relief. (Defs. Rep. Br. at 13).  As discussed above (see supra at 14), a determination that the ARTOFEX mark is invalid would clarify the parties' rights as to the use of the mark, which could lead to a compromise by the parties over their respective use of the mark, and could potentially aid the pending

---

[15]Defendants argue that the doctrines of equitable estoppel and laches bar Plaintiffs' actions.  Neither doctrine, however, applies to this action for declaratory relief.

17

litigation.  Therefore, a declaratory judgment in this case will provide practical assistance to the parties and could enable them to make responsible future decisions.

Therefore, Plaintiffs have met their initial burden under Fed. R. Civ. 12(b)(1) by showing that an actual controversy exists between adverse parties.  The parties' dispute over the validity of the ARTOFEX trademark is ripe for determination. Plaintiffs plead the three necessary elements to seek a declaratory judgment under 28 U.S.C. § 2201(a) to invalidate the ARTOFEX trademark: 1)the parties clearly have adverse interests since Plaintiffs have demonstrated a "reasonable apprehension" of litigation regarding their use of the ARTOFEX mark; 2)a declaratory judgment invalidating the mark would be a conclusive judicial determination as concerns the current ARTOFEX mark; and 3)the judgment would help clarify the parties' respective rights to use the ARTOFEX mark.

### C) Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must examine whether a claim has been stated for which relief can be granted.  This is not an attack on "the merits of the case, but merely tests the legal sufficiency of the Complaint." <u>Video Pipeline, Inc.</u>, 210 F. Supp. 2d at 556.  A court must accept "all factual allegations as true" in the pleadings, and must "construe the complaint in the light most

18

favorable to the plaintiff." Pinker v. Roche Holdings Ltd., 292
F.3d 361, 374 n.7 (3d Cir. 2002). Defendants argue that Zinn has
failed to state "any claims for which relief can be granted."
(Defs. Br. at 20). The Court has already found that Plaintiffs
have stated a claim for which declaratory relief can be granted
in Counts III and V. Therefore the following analysis only
concerns Counts I, II, IV, VI, VII, and VIII.

**1. Cancellation of the ARTOFEX Trademark**

Counts I, II, and VI seek cancellation of the ARTOFEX mark.
Under § 37 of the Lanham Trademark Act, 15 U.S.C.S. § 1119, in an
action involving a registered trademark, the court may determine
the right to registration and it may order cancellation of
registrations. The court's power under § 37 is a concurrent
remedy with trademark cancellation proceedings through the United
States Patent Office ("USPTO"). Simmonds, 257 F.2d at 491. A
third party may seek cancellation of a registered mark under 15
U.S.C. § 1064(3)on the grounds that its registration was
fraudulently obtained or abandoned. Metro Traffic Control v.
Shadow Network, 104 F.3d 336, 340 (Fed. Cir. 1997). Fraudulent
procurement occurs when an applicant "knowingly makes false,
material representations of fact in connection with an
application." Id. (citations omitted). Fraud must be proved by
clear and convincing evidence by the party seeking cancellation
based on fraudulent procurement. Id. The Lanham Act imposes an

19

obligation on the applicant that he will not knowingly make misleading or inaccurate statements in the verified declaration which is part of the registration application.  Id.

### a. ARTOFEX Trademark by Assignment '231276

In Counts I and II, Plaintiffs seek cancellation of the ARTOFEX trademark '231276 which Seruga claims by assignment. Although Plaintiffs argue that the ARTOFEX trademark assignments are fraudulent and invalid, Plaintiffs do not allege in the Complaint that Defendant Seruga "knowingly ma[d]e misleading or inaccurate statements to obtain the assignments of the trademark." (Compl. at 3-5).  The court in Metro Traffic, distinguished a false statement, which was based on a misunderstanding or mere omission, from a fraudulent statement made with an intent to mislead.  Id.  Count II of Plaintiffs' Complaint actually claims that Defendants procured ownership by "false" means, but nowhere states that Defendant Seruga's conduct was intentional or knowing.  Therefore, Plaintiffs fail to state a claim for cancellation on the basis that Defendant Seruga fraudulently procured the ARTOFEX mark.

Plaintiffs also may seek cancellation of the trademark under U.S.C.A. § 1064(3) if a trademark has been abandoned.  Section 45 of the Lanham Act, 15 U.S.C. § 1127, provides that "[a] mark shall be deemed abandoned . . . [w]hen its use has been discontinued with intent not to resume use."  "To establish the

defense of abandonment it is necessary to show not only acts indicated a practical abandonment, but an actual intent to abandon." Saxlehener v. Eisner & Mendelson Co., 179 U.S. 19, 31 (1900).  Although Plaintiffs argue in their brief that the mark was abandoned, Plaintiffs fail to allege anywhere in their Complaint that the mark was abandoned or that there was an actual intent to abandon the mark.  Plaintiffs have, therefore, failed to state any claim upon which this court can cancel the trademark.

### b. Cancellation of the Use-Based ARTOFEX Mark '438

In Count VI of the Complaint, Plaintiffs allege that Seruga is attempting to fraudulently obtain the use-based ARTOFEX registration '438 through the USPTO in violation of 15 U.S.C.A. § 1120.  Section 38 of the Lanham Act directs courts to "award damages to persons injured by a registration fraudulently procured" in the USPTO.  Country Mutual Ins. Co., v. American Farm Bureau Fed'n., 876 F.2d 599, 600 (Fed. Cir. 1989). Plaintiffs allege Seruga falsely stated on the application that to the best of her knowledge, no other person or corporation has the "right to use the mark in commerce," even though "Defendants were well aware of Plaintiffs' right to use the ARTOFEX mark in commerce, pursuant to the Corporate Settlement Agreement." (Compl. at 8-9).

21

Defendants argue that the claim to find Defendants' '438 application fraudulent is not ripe for adjudication and that Plaintiffs have failed to plead fraud with particularity under Fed. R. Civ. P. 9(b).

At the time the Complaint was filed, the '438 application was still pending at the USPTO, and the Court agrees it would not have been ripe for adjudication.  At oral arguments heard by the Court on July 27, 2006, Seruga's counsel stated to the Court that the '438 ARTOFEX trademark registration has since been issued by the USPTO.  The Court, therefore, will grant Plaintiffs leave to revise Count VI and file an amended complaint concerning fraudulent procurement of the '438 ARTOFEX trademark registration.

### 2. Breach of Contract

Plaintiffs allege that Defendants breached the Settlement Agreement in Count IV of the Complaint.  Defendants contend that Zinn is estopped from challenging the complained of conduct in the Complaint because the Settlement Agreement states that "the parties agree to resolve their general equity litigation and the disputes implicated therein."[16]

To establish a breach of contract claim, under New Jersey state law, a party must allege that 1) a contract existed, 2) a breach of that contract occurred, 3) damages resulted therefrom,

---

[16]Defs. Br. at 39.

and 4) the movant performed its own contractual duties.  <u>Video Pipeline, Inc.</u>, 210 F. Supp. 2d at 561; (the court also cited <u>Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co.</u>, 772 F.Supp. 184, 219 (D.N.J. 1989)(which cited 5 Wright & Miller, Federal Practice & Procedure, § 1235 at 189-90)); <u>In re Cendant Corp. Sec. Litig.</u>, 139 F. Supp. 2d 585, 604 n.10(D.N.J. 2001)(which noted that under New Jersey law the movant must plead its own contractual duties).

Plaintiffs fail to plead all the required elements to bring a claim for breach of contract.  Plaintiffs allege that "Defendants have deliberately engaged in a course of conduct to harass and destroy Plaintiffs," (Comp. at 7, ¶ 41), but Plaintiffs do not explain how this conduct breached any provision of the Settlement Agreement.  Plaintiffs also do not specify any damages that resulted from the alleged breach, nor do they claim that Zinn has performed his own contractual duties under the Settlement Agreement.  Therefore, Plaintiffs do not fulfill the second, third, and fourth elements that must be asserted to state a claim a for breach of contract and Count IV of the Complaint will be dismissed.

### 3. Unfair Competition Under 15 U.S.C.A. § 1125

In Count VII, Plaintiffs allege that Defendants engaged in unfair competition, namely false advertising, in violation of 15 U.S.C.A. 1125 of the Lanham Trademark Act.  Section 43(a) of 15

U.S.C.A. § 1125(a) provides that:

> (1) Any person who, or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact
>                 . . .
> B) in commercial promotion or advertising, misrepresents the nature, characteristics, [or] qualities . . . of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Plaintiffs must allege all of the following elements in their complaint for an action brought under section 43(a): 1) the defendant has made misleading or false statements regarding his own or another's product; 2) there is "actual deception or at least a tendency to deceive" a substantial segment of the targeted audience; 3) the deception is "material" in that it will likely influence purchasing decisions; 4) the advertised products moved in interstate commerce; and 5) the plaintiff is likely to suffer injury in terms of a loss of good will, declining sales, etc. <u>Ditri v. Coldwell Banker Residential Affiliates, Inc.</u>, 954 F.2d 869, 872 (1992).

The Complaint satisfies the five elements of unfair competition.  Plaintiffs allege that Defendants published false statements on their Excellent Bakery website, <u>www.excellent-bagels.com.</u>  The purported false statements include the claim that Seruga is the owner of the 1927 ARTOFEX mark, as well as "false and misleading" allegations about the "other company,"

which is accused of lying about its ability to sell Artofex products. (Compl. at 11). Plaintiffs contend that these statements have defrauded customers since both parties have the right under the Settlement Agreement to purchase, sell, repair and advertise Artofex parts and equipment. (Compl. at 10). The website states that "[s]ince 1995, two companies have advertised that they are both the **SOLE** U.S. Agency of Artofex mixers and parts," (emphasis in original), and it asserts that one of the companies is lying. (Compl. at 37). It also contains a link to a purported "cease and desist" order directed at the "'other company.'" Id. The website advertises a link to a letter from PITEC, a German company, which was allegedly sent "to the 'other company,'" and which asserts that Defendants are "the only authorized Artofex representative in the United States." (Id. at 37-38). Plaintiffs maintain that these statements are false, misleading, likely to confuse customers, and give Defendants an unfair economic advantage. Plaintiffs therefore establish the first three elements.

Plaintiffs must also show that Defendants' advertising affected interstate commerce. Ditri, 954 F.2d at 872. Plaintiffs assert that the "statements and publications" on Defendants' website were "motivated by Defendants' malicious intention to monopolize the U.S. market for Artofex-type products and services, and destroy Plaintiffs' business in the same

25

market." (Compl. at 13, ¶ 74). The "in commerce" requirement under § 43(a) has been broadly interpreted. <u>U.S. Healthcare Inc. v. Blue Cross of Greater Phila.</u>, 898 F.2d 914, 922 (3d Cir. 1990)(citations and internal quotations omitted). The Third Circuit has concluded that the Internet is a channel and instrumentality of commerce. <u>U.S. v. MacEwan</u>, 445 F.3d 237, 244 (3d Cir. 2006). "[B]ecause of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce." <u>Id.</u> Therefore Plaintiffs meets the fourth element that the products moved in interstate commerce because Plaintiffs have asserted on their Internet website that the U.S. market for Artofex products will be affected.

Finally, Plaintiffs also assert that they have suffered monetary damages from Defendants' conduct. (Compl. at 12, ¶ 70). Therefore Plaintiffs have satisfied the final element needed to state a claim for unfair competition under 15 U.S.C.A. § 1125. **4)**

**4) Product Disparagement**

In Count VIII, Plaintiffs allege that Defendants have engaged in product disparagement. Product disparagement, which is also known as trade libel, arises from the cause of action concerning interference with contractual relations. <u>Mayflower Transit, LLC, v. Prince</u>, 314 F. Supp. 2d 362, 377 (D.N.J. 2004).

While defamation of a corporation injures the corporation's reputation, product disparagement injures the reputation of a corporation's products. <u>Id.</u> at 377 (citation and internal quotation omitted). The elements of product disparagement are: 1)publication, 2)with malice, 3)of false allegations concerning the product, business, or property, and 4)special damages. <u>Id.</u> at 378.

Special damages involve pecuniary harm, which the plaintiff must "plead with particularity." <u>Id.</u> In <u>Mayflower</u>, the court found that plaintiff had not sufficiently articulated special damages by stating that it would inevitably be damaged by the defendant's website because of the reach of the Internet. <u>Id.</u> at 379; <u>see</u> <u>Systems Operations Inc.</u>, 555 F.2d at 1144 (citations omitted)(a claim for product disparagement always requires special damages). The court in <u>Mayflower</u> further noted that "at least one court in this State" has required that such special damages require that "Plaintiffs 'allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication.'" <u>Id.</u> at 378 (quoting <u>Juliano v. ITT Corp.</u>, 1991 WL 10023, at 6 (D.N.J. Jan. 22, 1991)).

Similarly, Plaintiffs have not pleaded special damages incurred by Defendants other than a general allegation that the

statements published on the website "caused Plaintiffs to sustain damages." Plaintiffs' therefore fail to plead an essential element in their claim of product disparagement and cannot show a likelihood of success on the merits to support an injunction against Defendants. The Court accordingly grants Plaintiffs leave to revise and file an amended complaint for the claim of product disparagement.

###   III.   CONCLUSION

For the reasons stated in this opinion, the Court denies Defendants' motion to dismiss Counts I, II, and VI. The Court grants Plaintiffs leave of twenty days to file an amended complaint in Counts I and II seeking cancellation of the ARTOFEX trademark '276, and Count VI seeking cancellation of the ARTOFEX trademark '438. The Court will also grant Plaintiffs leave of twenty days to file an amended complaint in Count VIII for product disparagement.

The Court denies Defendants' motion to dismiss Counts III and V seeking a declaratory judgment that the ARTOFEX trademark '276 is invalid, and Count VII for unfair competition.

The Court will grant Defendants' motion to dismiss Count IV for breach of contract.

An appropriate Order accompanies this Opinion.

_____

_____

                              /s/ William G. Bassler
_____WILLIAM G. BASSLER, U.S.S.D.J.

Dated: July 28, 2006