NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

RICHARD ZINN, Individually and as Sole    :
Shareholder of Excalibur Bagel & Bakery
Equipment, Inc., a New Jersey Corporation,    :
and EXCALIBUR BAGEL & BAKERY
EQUIPMENT, INC., a New Jersey Corporation, :

    Plaintiffs,               :

             v.               :

KARIN SERUGA, Individually and as Sole    :
Shareholder of Excellent Bakery Equipment
Co., a New Jersey Corporation, and     :
EXCELLENT BAKERY EQUIPMENT CO.,
a New Jersey Corporation,         :

    Defendants.          :

Civ. No. 05-3572 (GEB)

**MEMORANDUM OPINION**

**BROWN, Chief Judge**

      This matter comes before the Court upon the motion for partial summary judgment of

plaintiffs Richard Zinn ("Zinn") and Excalibur Bagel & Bakery Equipment, Inc. ("Excalibur")

(collectively, "Plaintiffs"), the cross-motion for summary judgment of Karin Seruga ("Seruga")

and Excellent Bakery Equipment Co. ("Excellent") (collectively, "Defendants"), and Defendants'

motion for summary judgment.  The Court has reviewed all the parties' submissions and decided

the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the

reasons set forth below, the Court will deny Plaintiffs' motion for summary judgment, deny

Defendants' cross-motion for summary judgment, and deny Defendants' motion for summary

judgment.

## BACKGROUND

A brief overview of the facts of this case is necessary.  Ms. Seruga and Mr. Zinn used to be married, but divorced in 1997.  (Defendants' Motion for Summary Judgment ("Def. Mot.") at 3; Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp'n") at 2.)  Prior to their divorce, Mr. Zinn and Ms. Zeruga jointly owned Banta (a manufacturer of printing presses, baking equipment and parts) and Excelsior (a seller of bagel and bakery equipment).  (Def. Mot. at 4; Plaintiffs' Motion for Partial Summary Judgment ("Pl. Mot.") at 1, 7.)  Excelsior was jointly owned by the couple through R&K Zinn Corp. ("R&K Zinn").  (Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment ("Def. Opp'n") at 5; Pl. Mot. at 1.)  During Ms. Seruga and Mr. Zinn's ownership of Excelsior, the company was the sole, exclusive distributor of ARTOFEX products in the United States.  (Def. Mot. at 5; Pl. Mot. at 1.)  In 1995, however, Ms. Seruga and Mr. Zinn dissolved Excelsior and Banta and established their own independent – and competing – businesses.  (Def. Mot. at 5; Pl. Mot. at 2.)  Ms. Seruga is the sole shareholder of Excellent, and Mr. Zinn is the sole shareholder of Excalibur.  (Def. Mot. at 5; Pl. Mot. at 2.)

According to Defendants, F. Aeschbach SA ("FASA") – a company owned by Fritz Aeschbach – was the originator of the ARTOFEX trademark.  (Defendants' Statement of Facts in Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of Cross-Motion for Summary Judgment ("Def. Opp'n Stat.") at ¶¶ 38-39.)  They maintain that Excelsior and FASA entered into a distributorship agreement in 1977.  (Def. Opp'n Stat. ¶¶ 12-14.)  Thereafter, Fritz Aeschbach sold FASA to Ulrich Wampfer, who was later affiliated with F. Aeschbach AG ("FAAG"), Artofex AG ("Artofex AG") and Artofex Engineering Works ("AEW").  (*Id.* at ¶¶

2

42-44.)  Defendants also submit that FASA had licensed the ARTOFEX trademark to Kolb

("Kolb"), but retained ownership of the mark in the United States until 2003.  (*Id.* at ¶ 46.)

Defendants contend that they obtained the right to use the ARTOFEX mark through Kolb and

Pitec (another licensee of the mark).  (*Id.* at ¶¶ 47-48.)  Plaintiffs, however, dispute much of the

assignment and ownership history of the ARTOFEX mark.

The conflicting understanding of the mark's ownership led to litigation between the

instant parties.  Indeed, the dissolution of Excelsior was promptly followed by litigation in New

Jersey Superior Court relating to the use, ownership and potential infringement of the ARTOFEX

mark.  (Def. Mot. at 8; Pl. Mot. at 2.)  All litigation between the parties was then concluded with

a Corporate Settlement Agreement (the "Settlement Agreement") on April 24, 1997, but not

before the Honorable Judge Gerald C. Escala enjoined the parties from using the Excelsior logo,

its telecopy number, and holding themselves out as successors to Excelsior or Banta.  (Def. Mot.

at 5, 8; Pl. Mot. at 2.)

On April 2, 2004, Ms. Seruga filed a complaint against Mr. Zinn in New Jersey Superior

Court claiming ownership of the '276 Mark.  (Plaintiffs' Statement of Facts in Support of Motion

for Summary Judgment ("Pl. Stat.") at ¶ 22; Docket Entry No. 30 ("Consent Order").)  On July

18, 2005, Mr. Zinn and Excalibur filed a complaint (the "Complaint") in this Court against Ms.

Seruga and Excellent.  (Docket Entry No. 1.) The state court action and the instant federal action

were then consolidated.  (Pl. Stat. at ¶ 22; Consent Order.)  Plaintiffs amended their Complaint

on August 14, 2006.  (Docket Entry No. 15 ("Am. Compl.")  Defendants filed counterclaims

against Plaintiffs on December 22, 2006.  (Docket Entry No. 26 ("Answer").)  By Order dated

August 29, 2007, this Court dismissed with prejudice Counts I, II and VIII of the Amended

3

Complaint.  (Docket Entry No. 70.)

There remain before this Court Plaintiff's claims of mark invalidity (Count III and IV), fraudulent registration (Count V) and unfair competition under 15 U.S.C. § 1125 (Count VI), as well as Defendants' counterclaims of federal trademark infringement (Count I), federal counterfeiting (Count II), federal unfair competition and false designation of origin (Count III), federal cybersquatting (Count IV), infringement, counterfeiting and unfair competition under New Jersey statutory law (Count V), infringement, counterfeiting and unfair competition under New Jersey common law (Count VI), mark dilution under state statutory law (Count VII), and mark dilution under common law (Count VIII).  (Am. Compl. at 3-14; Answer at 30-47.)

On November 1, 2007 Defendants moved for summary judgment on all of their counterclaims.  (Docket Entry No. 85.)  On that date, Plaintiffs also moved for partial summary judgment on Counts III, IV and V of their Amended Complaint.  (Docket Entry No. 78.)  On December 3, 2007, Defendants filed their opposition to Plaintiff's motion along with a cross-motion for summary judgment on Counts III, IV, V and VI of Plaintiffs' Amended Complaint. (Docket Entry No. 103.)

**DISCUSSION**

A.      Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P.  56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

B.      Plaintiffs' Partial Motion for Summary Judgment

Plaintiffs seek an Order granting summary judgment on Counts III, IV and V of Plaintiffs' Amended Complaint, and a judgment that the ARTOFEX marks covered by Registration No. 231,276 ("the '276 Mark") and Registration No. 3,097,038 ("the '038 Mark") are invalid.  (Pl. Mot. at 1.)

1.      Whether The ARTOFEX Mark Is Invalid

a.      Abandonment

Plaintiffs requests a summary judgment that the '276 Mark was abandoned, and thus returned to the public domain.  (Pl. Mot. at 24.)  The Court will deny that request.

Abandonment is provided for in the Lanham Act, which states that a mark is deemed abandoned:

> (a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for three consecutive years shall be prima facie evidence of abandonment . . . [or]
>
> (b) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the

> generic name for the goods or services on or in connection with
> which it is used or otherwise to lose its significance as a mark.

15 U.S.C. § 1127.  "To establish the defen[s]e of abandonment it is necessary to show not only

acts indicating a practical abandonment, but an actual intent to abandon."  *United States Jaycees*

*v. Philadelphia Jaycees*, 639 F.2d 134, 138 (3d Cir. 1981), *quoting Saxlehner v. Eisner &*

*Mendelson Co.*, 179 U.S. 19, 31 (1900); *see also PBI Perf. Prods. v. NorFab Corp.*, No. 05-

4836, 2007 U.S. Dist. LEXIS 58689, at *8 (E.D. Pa. Aug. 3, 2007).  "Acts which unexplained

would be sufficient to establish an abandonment may be answered by showing that there never

was an intention to give up and relinquish the right claimed."  *Philadelphia Jaycees*, 639 F.2d at

138, *quoting Saxlehner*, 179 U.S. at 31.

     The Third Circuit has held that:

> [a] trademark license is typically written and contains express
> terms giving the licensor power to engage in quality control to
> ensure that the licensee does not engage in mere 'naked' use of the
> mark.  Naked licensing is an 'uncontrolled licensing of a mark
> whereby the licensee can place the mark on any quality or type of
> goods or services,' raising 'a grave danger that the public will be
> deceived by such a usage.'

*Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 823 (3d Cir. 2006); *see also Unicasa*

*Mktg. Group, LLC v. Martha Spinelli*, No. 04-4173, 2007 U.S. Dist. LEXIS 16628, at *8 (D.N.J.

March 7, 2007).  "The only effective way to protect the public where a trademark is used by

licensees is to place on the licensor the affirmative duty of policing in a reasonable manner the

activities of his licensees."  *Doeblers*,  442 F.3d at 823, *citing Dawn Donut Co. v. Hart's Food*

*Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959).  "Failure to provide quality control may constitute

naked licensing, leading to abandonment of the mark." *Doeblers*, 442 F.3d at 823, *citing Ditri v.*

*Coldwell Banker Residential Affil., Inc.*, 954 F.2d 869, 873 (3d Cir. 1992).

In applying the standard above, the Court will be mindful of the fact that "abandonment, being in the nature of a forfeiture, must be strictly proved." *Philadelphia Jaycees*, 639 F.2d at 139, *citing P.A.B. Produits et Appareils de Beaute v. Satinine Societa in Nome Collettivo di S.A. e. M. Usellini*, 570 F.2d 328, 332-33 (C.C.P.A. 1978). Indeed, "[e]vidence of abandonment must be clear and convincing." *American Olean Tile Co. v. American Marazzi Tile, Inc.*, No. 86-3089, 1998 U.S. Dist. LEXIS 11103, at *17 (E.D. Pa. Oct. 5, 1988); *Interstate Net Bank v. NETB@NK, Inc.*, 348 F. Supp. 2d 340, 348 (D.N.J. 2004) (abandonment to be established by clear and convincing evidence).

Plaintiffs submit that the original owner of the '276 Mark, FAAG, failed to assert any quality control on the products being distributed and manufactured under the '276 Mark and thus abandoned its rights to the mark. (Pl. Mot. at 24.) Indeed, Plaintiffs contend that R&K Zinn had a distributorship agreement with FAAG but had no right to manufacture and modify ARTOFEX products. (*Id.* at 25.) Plaintiffs allege that R&K Zinn nonetheless manufactured and modified ARTOFEX products, that this activity went unchecked by FAAG (and later Artofex AG and AEW), and that in the United States the ARTOFEX mark "no longer identified the goods and services under the control of the mark owner . . . ." (*Id.*)

Defendants respond that Plaintiffs have failed to allege any facts necessary to meet the high burden to overcome the presumption of validity. (Def. Opp'n at 19.) According to Defendants, Plaintiffs "did not reveal any probative third party use of the ARTOFEX mark for new products," and "did not offer any survey evidence of either customer perception or abandonment." (*Id.*) Moreover, Defendants insist that "Plaintiffs misrepresent the evidence of

7

quality control . . . ." (*Id.* at 21.)  Indeed, Defendants submit that Plaintiffs' statements "are misleading because significant evidence of quality control has been adduced at Seruga and Zinn's depositions . . . ." (*Id.*)  They add that "the ARTOFEX mark has been used by related entities for years, pursuant to licensing and/or distribution agreements." (*Id.*)

The Court agrees with Defendants that there remain, at this stage, genuine issues of material fact as to whether the '276 Mark had been abandoned.  In particular, there remain genuine issues of material fact with respect to any intent to abandon the mark, any perception by the public that the mark has been abandoned, and the existence of a quality-control system to monitor RK&Zinn's use of the ARTOFEX license prior to the parties' divorce.  Plaintiffs have, at this stage in the proceedings, failed to set forth evidence sufficient to justify a summary judgment of abandonment.

b.      Invalid Assignment

Plaintiffs further argue that they are entitled to summary judgment that the ARTOFEX mark is in the public domain because every assignment of the '276 Mark since 1995 is allegedly invalid.  (Pl. Mot. at 27.)  Again, the Court disagrees.

"A trademark may be transferred or assigned only with the transfer of the goodwill of a business, because a trademark has no significance independent of that goodwill." *Colonial Elec. & Plumbing Supply of Hammonton, LLC v. Colonial Electric Supply, Ltd.*, No. 05-5408, 2007 U.S. Dist. LEXIS 94417, at *14 (D.N.J. Dec. 27, 2007), *citing Premier Dental Products Co. v. Darby Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986).  "A purported assignment of a trademark without goodwill is an invalid 'assignment in gross.'" *Colonial Elec.*, 2007 U.S. Dist. LEXIS 94417, at *15, *citing NETB@NK*, 348 F. Supp. 2d at 348.  "'Goodwill' is the advantage obtained

from use of a trademark. This includes public confidence in the quality of the product and in the warranties made on behalf of the product, and the 'name recognition' of the product by the public that differentiates that product from others." *Colonial Elec.*, 2007 U.S. Dist. LEXIS 94417, at *15 n.9.

"The transfer of a trade name to a subsequent entity is presumed in the absence of evidence to the contrary." *Id.* at *15, *citing Mid-List Press v. Nora*, 275 F. Supp. 2d 997, 1002 (D. Minn. 2003). "Formal assignments of trade names are not required, because 'the law presumes that when a business is conveyed, its trade name and goodwill are also conveyed.'" *Colonial Elec.*, 2007 U.S. Dist. LEXIS 94417, at *16, *quoting American Sleek Craft, Inc. v. Nescher*, 131 B.R. 991, 996 (D. Ariz. 1991).

Even "[i]f a writing is lacking, an assignment may be proven in other ways." *Colonial Elec.*, 2007 U.S. Dist. LEXIS 94417, at *16, *citing Doebler*, 442 F.3d at 822. "If there is no documentary evidence of an assignment, it may be proven by the clear and uncontradicted oral testimony of a person in a position to have actual knowledge." *Colonial Elec.*, 2007 U.S. Dist. LEXIS 94417, at *16, *citing Doebler*, 442. F.3d at 822. "Courts, however, 'must be cautious in scenarios that do not involve clear written documents of assignment.'" *Colonial Elec.*, 2007 U.S. Dist. LEXIS 94417, at *16, *citing Doebler*, 442. F.3d at 822.

Plaintiffs contend that the two purported assignments of the '276 Mark after 1995 are invalid. (Pl. Mot. at 27.) Indeed, Plaintiffs argue that the alleged October 15, 2003 assignment from FASA to Ms. Seruga failed to transfer the goodwill connected with the mark. (*Id.*) Plaintiffs add that the "assignor did not have the rights to transfer the '276 Mark," since it had allegedly been transferred to AEW on February 28, 1995 and had never been subsequently

transferred back to Artofex AG, FAAG or FASA.  (*Id.* at 27-28.)  Plaintiffs argue that under the circumstances, the '276 Mark could not have been properly assigned to Ms. Seruga.  (*Id.* at 28.)

Turning to the other assignment, Plaintiffs suggest that on April 15, 2004 FASA transferred the mark bearing serial number 76545438 to Ms. Seruga, but that said serial number does not correspond to the '276 Mark.  (*Id.* at 28.)  Plaintiffs claim that the serial number corresponds instead to Ms. Seruga's second trademark application for the ARTOFEX name, dated September 17, 2003, which Plaintiffs claim was abandoned on October 27, 2004 but later revived.  (*Id.*)  In addition, Plaintiffs contend that the assignment must fail because it did not transfer the goodwill associated with the trademark.  (*Id.*)

Plaintiffs contend that "[p]rior to the commencement of this litigation, the valid owner of the '276 Mark was AEW," and that AEW dissolved in 2006 without assigning its rights to the '276 Mark.  (*Id.* at 29.)  Plaintiffs submit to the Court that the '276 Mark fell into the public domain with AEW's dissolution.  (*Id.*)  Plaintiffs deride Ms. Seruga's reliance on corrective assignments of the '276 Mark, dismissing them as littered with falsehoods, "all of which are [allegedly] part of Defendant Seruga's scheme to obtain ownership of a mark which was previously sold and abandoned by a bona fide purchaser."  (*Id.*)  Mr. Zinn and Excalibur insist that the USPTO's recording of the corrective assignments does not create any type of presumption of validity.  (*Id.*)  Moreover, Plaintiffs suggest that Artofex AG did not dissolve on July 7, 1989, that the '276 Mark was assigned to AEW in 1995, and that the assignment was a transfer of ownership of all rights in the '276 Mark.  (*Id.* at 30 (emphasis added).)  Plaintiffs conclude that AEW cannot be deemed to have merely been a licensee outside of the United States, but was instead the proper owner of the mark.  (*Id.*)

10

Finally, Plaintiffs contend that the "invalid" assignment of the '276 Mark from FASA to Ms. Seruga was executed on October 15, 2003, and deem irrelevant Defendants' claim that Ms. Seruga in fact entered into an agreement to assign the '276 Mark as early as September 17, 2003 because said purported assignment was not in writing.  (*Id.* at 31.)   Plaintiffs conclude that "Defendant Seruga's written assignment, although invalid because FASA did not own the mark and because it was a naked assignment, was not executed until October 15, 2003."  (*Id.*)

Defendants respond, however, that the errors in the assignments do not invalidate the registration or the mark, and that Plaintiffs' motion for summary judgment for Count IV should be granted in Defendants' favor.  As a threshold matter Defendants note that the assignment of the '276 registration has been recorded and acknowledged by the USPTO – an acknowledgment that Defendants submit constitutes *prima facie* evidence of the execution of the assignment. (Def. Opp'n at 23.)

Moreover, Defendants claim that Plaintiffs err in suggesting that the ownership of the mark lies with Artofex AG.  Indeed, Defendants highlight the declaration of Mr. Wampfler, in which he "explained that the dissolution and subsequent merger with F. Aeschbach caused ownership of Artofex AG's assets, including the ARTOFEX mark, to revert to F. Aeschbach." (*Id.* at 24.)

Defendants also dismiss Plaintiffs' argument that the assignments to Seruga were invalid because the word "goodwill" was not used in the assignment document, insisting that the Court should instead "look to the circumstances surrounding the assignment to determine if goodwill actually passed."  (*Id.*)  Defendants add that Plaintiffs' Complaint alleges that Artofex AG was the last owner of the mark, yet Plaintiffs' later submissions to this Court suggest that AEW never

11

assigned the mark.  (*Id.* at 25.)  Defendants further contest the validity of the alleged assignment

to AEW, claiming that "the only evidence of record is that the written assignment to AEW . . .

was an error, as explained by Wampfler . . . ."  (*Id.*)  Finally, Defendants posit that "Plaintiffs'

simplistic attempts to invalidate a long-standing mark based on total speculation and

'technicalities' must fail" as no allegations have been set forth that the trademark and the

goodwill have been separated.  (*Id.* at 27.)

The Court concurs with Defendants.  Viewing all allegations in the light most favorable

to non-movants, there remains a genuine issue of material fact as to whether the assignments

were proper.  In particular, the fact that the '276 assignment was registered with the PTO, the

declaration of Mr. Wampfler and the inconsistent accounts regarding final ownership of the mark

lead the Court to conclude that summary judgment is inappropriate at this time.

 2. Whether Defendants Have Standing

Plaintiffs submit that "Defendants do not have standing to sue on the '276 Mark because

the 2003 assignment was invalid and because Defendants' *nunc pro tunc* assignment dated June

7, 2006 does not confer retroactive standing on Defendants.  (Pl. Mot. at 31-32.)  Indeed,

Plaintiffs claim that when the legal proceedings were initiated, the '276 Mark assignment was

still invalid as an assignment in gross since the *post hoc* correction on June 7, 2006 did not

retroactively grant Defendants standing to sue.

Moreover, Plaintiffs submit that even "[i]n the event that the Court finds that the '276

Mark has not been abandoned and that Defendants have somehow acquired ownership rights to

it, Defendants do not have the right to sue and recover damages for infringements prior to a valid

assignment date."  (*Id.* at 33.)  Plaintiffs contend that since "the right to sue for past infringement

was never assigned to Defendants by any assignor . . . Defendants cannot collect for damages, if any, prior to a valid assignment of the '276 Mark."  (*Id.* at 34.)

Defendants respond that "Plaintiffs failed to plead standing as an affirmative defense and cannot raise [it] years later," and add that even if standing had been properly raised as a defense, summary judgment would be inappropriate because, "at a minimum, Seruga as an owner has a claim after 2003[] and still has unfair competition claims prior to this date."  (Def. Opp'n at 28.) Moreover, Defendants contest Plaintiffs' suggestion that Excalibur ceased to use the mark on products prior to 2003, alleging that Plaintiffs have stopped marking the products with the ARTOFEX mark but continue to rely on the mark in invoices, orders, magazines and the website. (*Id*. at 28-29.)

As a threshold matter, the Court will disregard Defendants' claim that Plaintiffs have waived the right to raise a standing defense.  As explained by the Supreme Court, it is an issue that the Court must address "even if the courts below have not passed on it, and even if the parties fail to raise the issue before us. The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines."  *United States v. Hays*, 515 U.S. 737, 742 (1995), *quoting FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990).

The Court has held that there remains a genuine issue of material fact as to whether the 2003 assignment was valid.  Even viewing all evidence in the light most favorable to non-movants, it necessarily follows that there remains a genuine issue of material fact as to whether Defendants have standing to sue on the '276 Mark.  Indeed, "Section 32 of the Lanham Act grants standing to assert a claim of trademark infringement to the 'registrant' of the mark[,] 15

U.S.C. § 1114(1)[, and] defines registrant as including the registrant and its 'legal representatives, predecessors, successors and assigns.'" *Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98-5408, 2001 U.S. Dist. LEXIS 18738, at **12-13 (S.D.N.Y. Nov. 16, 2001), *quoting* 15 U.S.C. § 1127.

        3.     Whether The Rights To Registration No. 3,097,038 Are Void Because of Fraudulent Procurement Of The Registration

Plaintiffs submit that "Defendants have no rights to the '038 Mark because Defendant Seruga procured the '038 Mark through fraudulent representations to the [USPTO]." (Pl. Mot. at 34.) The Court will deny Plaintiffs' request for summary judgment on the issue.

It is well established that "[f]raud in the securing and maintenance of the registration of a federal trademark constitutes a ground for the cancellation thereof within the purview of Section 14(c) [15 U.S.C. § 1064]." *Gen'l Car & Truck Leasing Sys., Inc. v. Gen'l Rent-A-Car, Inc.*, No. 88-6500, 1990 U.S. Dist. LEXIS 12749 (S.D. Fla. July 11, 1990). Plaintiffs contend that Ms. Seruga "first claimed her Date of First Use was April 1, 1977, and then later amended that date to be April 4, 1927." (Pl. Mot. at 35.) Plaintiffs insist, however, that this misrepresented the facts. According to them, R&K Zinn first used the ARTOFEX mark in 1977 when it entered into a distributorship agreement with FAAG. (*Id*. at 36.) Plaintiffs conclude that there is no genuine issue of material fact that Defendant Seruga made material misrepresentations to the USPTO, and that the registration of the '038 Mark is therefore void. (*Id*.)

Second, Plaintiffs argue that Ms. Seruga misrepresented to the USPTO that no other person or entity had rights to use the mark. (*Id*.) Indeed, Plaintiffs suggest that at the time of the declaration "Defendants were well aware of Plaintiffs' clearly established rights to use the

[ARTOFEX] mark in commerce pursuant to the CSA between Plaintiffs and Defendants and by Judge Escala's 2003 Order." (*Id*. at 37.)

Third, Plaintiffs maintain that Ms. Seruga was aware that AEW had rights to use the ARTOFEX mark as a result of its ownership of the '276 Mark.  (*Id*.)  Plaintiffs conclude, in fact, that the combination of the CSA, Judge Escala's Order, and the contents of an August 19, 2005 email from Ms. Seruga to Ueli Wampfler confirm that Defendant knew or should have known that AEW and Zinn  had a right to use the ARTOFEX name in commerce. (*Id*. at 39-40.)[1]

Defendants take exception to Plaintiffs' characterization of the facts.  As a threshold matter, Defendants suggest that Mr. Zinn's affidavit is replete with summary statements that must be disregarded by the Court under Local Rule 7.2(a).  (Def. Opp'n at 30.)  Turning to the substance of Plaintiffs' allegations, Defendants insist that "[t]his Court has already found that mistakes in the application and assignments do not constitute fraud as a matter of law," and that counsel for Seruga has properly corrected any previous errors consistent with the USPTO rules.

---

[1]     That email provides, in part, that:

> The problem is that the Artofex trademark they transferred to me is the same as that of Artofex Enfield, which was transferred by you to Enfield on February 28, 1995.
>
> Would it be possible to get Enfield to transfer the trademark back to you?
>
> That would be the simplest solution, because two persons cannot register a trademark with the same number.
>
> I have now spent months defending this position before the court, not to mention all the legal and court costs.

Pl. Stat. Ex. A, at KSE0001947[D].`

(*Id*. at 30-32.)

According to Defendants, there remains for this Court to decide only "whether Zinn had any rights in the ARTOFEX mark based on the CSA such that Seruga's application declaration that she was the 'owner of the mark' and unaware of another's right to use the mark was knowingly false." (*Id*. at 32.) Here, Defendants maintain that "Plaintiffs failed to show that Seruga did not <u>believe</u> [that] she was the owner of the mark when the application was filed." (*Id*. at 35 (emphasis in original).) In fact, Defendants contend that the effort spent on litigation suggests that "Seruga obviously does not believe [that] Zinn is permitted to use the ARTOFEX mark." (*Id*.)

Defendants further claim that Mr. Zinn has not provided any evidence that he has rights in the mark. (*Id*.) In fact, according to Defendants, Judge Escala's ruling tends to indicate that only Ms. Seruga has the rights to the mark. (*Id*.) Defendants also explain that "because the owner of the mark was not a party to the CSA, it is axiomatic that Seruga could not divest the owner of rights, or give Plaintiffs any rights, other than those they already had . . . ." (*Id*.)

Finally, Defendants argue that Ms. Seruga's email to Mr. Wampfler is immaterial as it was sent two years after the application for a trademark. (*Id*. at 36.) In addition, Defendants contend that the email relates to AEW's rights in the mark, rather than Mr. Zinn's, and that its contents merely reveal Ms. Seruga's attempt to investigate the assignment records rather than Ms. Seruga's beliefs. (*Id*.)

Viewing all evidence in the light most favorable to non-movants, there remains a genuine issue of material fact as to whether the rights to Registration No. 3,097,038 are void because of the allegedly fraudulent procurement of the registration. The Court in particular notes that

16

neither the CSA nor Judge Escala's 2003 Order resolve all issues of fact as to whether Ms.

Seruga was aware of Plaintiffs' alleged rights to use the ARTOFEX mark in commerce when she

signed her declaration to the USPTO.  Similarly, the content of Ms. Seruga's  email to Mr.

Wampfler are insufficient to justify a summary judgment in favor of Plaintiffs on the issue,

especially since it was dated two years after Ms. Seruga's declaration to the USPTO.

      C.      Defendants' Motion for Summary Judgment

Defendants contend that they are entitled to summary judgment on their claims of

infringement, unfair competition, unlawful cybersquatting, dilution, breach of contract,

interference with prospective business advantage, and fraud.

      1.      Infringement and Unfair Competition Claims

Federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15

U.S.C. § 1125(a)(1)(A), are assessed under identical standards.  *A&H Sportswear, Inc. v.*

*Victoria's Secret Stores, Inc*., 237 F.3d 198, 210 (3d Cir. 2000).  "To prove either form of

Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid and legally protectable

mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services

causes a likelihood of confusion." *A&H*, 237 F.3d at 210, *citing Commerce Nat'l Ins. Servs., Inc.*

*v. Commerce Ins. Agency, Inc*., 214 F.3d 432, 437 (3d Cir. 2000); *see also Kos Pharms., Inc. v.*

*Andrx Corp*., 369 F.3d 700, 708-09 (3d Cir. 2004) ("To prevail on a claim for trademark

infringement or unfair competition under the Lanham Act, the owner of a valid and legally

protectable mark . . . must show that a defendant's use of a similar mark for its goods causes a

likelihood of confusion.").  The plaintiff bears the burden of proof.  *A&H*, 237 F.3d at 210-11,

*citing Am. Home Prods. Corp. v. Barr Labs., Inc*., 834 F.2d 368, 371 (3d Cir. 1987).

The Third Circuit "has adopted a non-exhaustive list of factors to consider in evaluating likelihood of confusion,  commonly referred to as the Lapp factors." *Kos*, 369 F.3d at 709, *citing Interpace Corp. v. Lapp, Inc*., 721 F.2d 460, 463 (3d Cir. 1983).  These factors were originally developed for cases involving non-competing products.  *Kos*, 369 F.3d at 709.  Although courts "need rarely look beyond the mark itself in cases involving competing goods, [the Third Circuit] recently recognized that consideration of the Lapp factors . . . can be quite useful for determining likelihood of confusion even when the goods compete directly."  *Id*., *quoting A & H*, 237 F.3d at 212.  The factors are:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark;
> (2) the strength of the owner's mark;
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;
> (5) the intent of the defendant in adopting the mark;
> (6) the evidence of actual confusion;
> (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
> (8) the extent to which the targets of the parties' sales efforts are the same;
> (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;
> (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*Kos*, 369 F.3d at 709, *quoting A&H*, 237 F.3d at 215.  "None of these factors is determinative in the likelihood of confusion analysis and each factor must be weighed and balanced one against

the other." *Kos*, 369 F.3d at 709, *citing Checkpoint Sys., Inc. v. Check Point Software Techs.*, *Inc.*, 269 F.3d 270, 280 (3d Cir. 2001).

          a.      Defendants' Arguments

Defendants maintain that they are entitled to summary judgment because, in light of their allegations, there remains no genuine issue of material fact that Plaintiffs are liable for trademark infringement and unfair competition.  Each element of their claim is addressed below.

          i.      Validity of the Mark and the Degree of Similarity Between the Owner's Mark and the Allegedly Infringing Mark

Defendants claim that the assignment of the '276 registration has been recorded and acknowledged by the USPTO, and that such acknowledgment constitutes *prima facie* evidence of the execution of the assignment.  (Def. Mot. at 14-15.)  Defendants also suggest that Ms. Seruga properly owns the '038 registration for the coined word mark ARTOFEX.  (*Id*. at 15.) Defendants conclude that they have met their *prima facie* burden of establishing rights in the ARTOFEX mark.  (*Id*.) Turning to the rest of the analysis, Defendants contend that the marks used by both parties are identical, and that the goods offered by Excellent and Excalibur are competing.  (*Id*.)  Defendants submit that consumer confusion is thus inevitable.  (*Id*.)  This is particularly true, argue Defendants, in light of Plaintiffs' specific uses of the mark.  (*Id*. at 17.) Such uses have allegedly included:

        -      advertising in Modern Baking magazine using the ARTOFEX mark, and describing Excalibur as "The One and Only Genuine ARTOFEX Manufacturer Worldwide." (*Id*. at 18.)
        -      the trade names ARTOFEX MACHINE LLC and ARTOFEX MACHINES INC being registered on behalf of

> Zinn and then displayed on baking machinery, parts and services.  (*Id*.)
>
> - Plaintiffs selling products using the ARTOFEX mark.  (*Id*.)
> - Plaintiffs letting the ARTOFEX mark appear in the metatags on the Excalibur website, but not in the visible text.  (*Id*.)
> - Plaintiffs relying on the phrase "ART OF Excalibur" on their website. (*Id*.)
> - Plaintiffs occasionally relying on the mark ARTOFLEX. (*Id*.)

Defendants further allege that Plaintiffs attempted to file a trademark application for

ARTOFEX at the USPTO and contacted the Swiss licensees for permission to sell ARTOFEX

products.  (*Id*. at 18-19.)  Defendants submit that all this evidence suggests that Mr. Zinn and

Excalibur knew that the ARTOFEX mark was valid and owned by Ms. Seruga, but that Plaintiffs

nonetheless produced competing products using that mark, leading to likely customer confusion.

### ii.    Strength of the Owner's Mark

Defendants posit that the strength of the ARTOFEX mark is clearly established, as it has

allegedly been in use since 1911 and because long-standing customers have been aware of the

mark for an extended period of time.  (Def. Mot. at 19.)  The strength of the mark is further

bolstered, according to Mr. Zinn, by the fact that it is a coined term that has no dictionary

meaning.  (*Id*.)

### iii.    The Price of the Goods and the Care of Purchasers

Defendants concede that "in some situations, more expensive goods might suggest [that]

purchasers exercise greater care, which could reduce the potential for confusion."  (*Id*. at 19-20.)

Defendants insist, however, that the price of goods is less significant a factor where the mark and

the goods are identical.  (*Id*. at 20.)  Here, because the competing products allegedly have nearly

identical specifications and are compatible with other ARTOFEX products, "the likelihood of confusion is not [according to Defendants,] negated by the relative cost of some of the larger goods."  (*Id*.)

        iv.    Length of time Without Confusion/Evidence of Actual Confusion

Defendants submit that they have presented to the Court affidavits setting out a number of instances of confusion on the part of customers.  (Def. Mot. at 21-22.)  Moreover, Defendants contend that "Plaintiffs have admitted that Seruga's use of ARTOFEX has created instances of confusion for at least twenty customers."  (*Id*. at 22.)  One such customer – Joseph's Gourmet Pasta – allegedly inquired whether Plaintiff's ARTOFEX TRIPLE ACTION MIXER was a genuine ARTOFEX product.  (*Id*.)  That inquiry was met with some caginess, according to Defendants, before Excalibur admitted that the mixers were not, in fact, authentic ARTOFEX mixers.  (*Id*.)

        v.    Plaintiffs' Intent in Adopting the Mark

Defendants submit that Plaintiffs' actions betray a reckless and willful adoption of the mark, which suggests infringement of the mark.  (*Id*. at 23-24.)  They contend that Zinn's attempt to use the ARTOFEX mark is largely motivated by resentment against Ms. Seruga, his former wife, who"independently secured the exclusive right to use, and later the ownership of, the ARTOFEX mark in the United States."  (*Id*. at 24.)  Defendants allege that Mr. Zinn received numerous warnings from ARTOFEX's European distributors, and others, that his attempts to use the ARTOFEX mark were inappropriate, but that Mr. Zinn characterized such responses as "Bull…."  and did not investigate them further.  (*Id*. at 24-26.)  According to Defendants, Mr.

Zinn went so far as to express his opinion that Judge Escala's opinion was wrong, and in Defendants' words, "revealed a total disregard and disrespect for the Court and his legal obligations . . . ." (*Id*. at 25.)

Defendants further allege that Mr. Zinn has long been aware that the ARTOFEX mark is registered. (*Id*.) Indeed, they claim that "Zinn was aware [that] the mark was federally registered back when he was with Excelsior," and was "also aware that Excelsior needed permission to use the ARTOFEX name in 1977 when Zinn and Seruga acquired Excelsior." (*Id*.) Defendants conclude that Mr. Zinn and Excalibur have simply hid their heads in the sand to avoid facing the reality that they do not own the ARTOFEX mark, and that the lengths to which they have gone to nonetheless use the mark betray a deliberate and intentional business scheme. (*Id*. at 26.)

> vi.   Marketing in the Same Trade Channels, Sales Efforts of the Parties, and Relationship of the Goods

Defendants submit that both parties advertise the ARTOFEX products in Modern Baking magazine, and have done so for many years. (Def. Mot. at 28.) In addition, they contend that both parties attend the same trade shows, have overlapping customers and sell overlapping goods. (*Id*. at 27-28.) Finally, Defendants allege that both parties sell machines with the specifications of the ARTOFEX machines, under the ARTOFEX name, and that all the parts and components manufactured by each party are compatible and overlapping with those offered by the other. (*Id*. at 28.)

> b.   Plaintiffs' Arguments

Plaintiffs respond that Defendants are not entitled to summary judgment on their trademark infringement and unfair competition claims. Indeed, reiterating many of the

arguments set forth in their own motion for summary judgment, Plaintiffs suggest that the '276

Mark is invalid because it was abandoned, (Pl. Opp'n at 4), or, in the alternative, that every

assignment of the mark since 1995 has been invalid and that Defendants therefore do not have

standing to sue on the mark.  (*Id.* at 6.)  Finally, Plaintiffs claim that summary judgment should

be denied because the CSA and Judge Escala's 2003 Order permit Plaintiffs to use the

ARTOFEX mark.  (*Id.* at 10.)

                    c.      Conclusion

       Viewing all evidence in the light most-favorable to non-movants, the Court holds that

there remain genuine issues of material fact as to whether Plaintiffs are liable for trademark

infringement and unfair competition.  In particular, Plaintiffs' allegations with respect to the

purported abandonment of the '276 Mark, or, in the alternative, the potential invalidity of its

assignment, raise issues of fact with respect to the validity of the '276 Mark.  Since the validity

of that mark is an essential element of trademark infringement and unfair competition, it

necessarily follows that summary judgment on those issues is inappropriate at this time.

                    2.      Counterfeiting

       "To establish federal trademark counterfeiting, the record must show that (1) the

defendants infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. §

1114(1)(a), and (2) intentionally used the trademark knowing that i[t] was counterfeit or was

willfully blind to such use." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567,

580 (E.D. Pa. 2002), *citing Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. 96-6961, 1998

U.S. Dist. LEXIS 8231 (E.D. Pa. Nov. 3, 1998).  The applicable standard for counterfeiting under

New Jersey State law similarly prohibits the following conduct:

(1) The use, without consent of the owner or designee, of any reproduction, counterfeit, copy, or colorable imitation of a mark in connection with the sale, distribution, offering for sale, or advertising in this State of any goods or services on or in connection with which the use is likely to cause confusion or mistake or to deceive as to the source of origin of the goods or services; or

(2) The reproduction, counterfeiting, copying or colorable imitation of a mark and the application of a reproduction, counterfeit, copy or colorable imitation of a mark to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale or other distribution in this State of the goods or services.

N.J.S.A. § 56:3-13:16.

Defendants submit that the arguments made in connection with their motion for summary judgment on infringement confirm that "Plaintiffs have infringed the registered ARTOFEX marks, and that such infringement was intentional and with full knowledge that ARTOFEX was a trademark." (Def. Mot. at 30.)  Defendants conclude that they have established that Plaintiffs have engaged in counterfeiting.  (*Id.*)

Plaintiffs respond that Defendants are not in fact entitled to summary judgment on their counterfeiting claims because: (i) the '276 Mark was not valid, (ii) Defendants do not own the '276 Mark, and (iii) "Plaintiffs' use of the ARTOFEX name does not constitute 'intentional infringement' [since] the CSA and Judge Escala's Order permitted such fair use."  (Pl. Opp'n at 11.)

As noted above, there remain genuine issues of material fact as to whether the '276 Mark is valid and whether it was properly assigned to Ms. Seruga.  Under the circumstances, the Court holds that there also remain genuine issues of material fact as to whether Plaintiffs are liable for

counterfeiting.  The Court will therefore deny Defendants' motion on the issue.

> 3.     Cybersquatting

Defendants also request that the Court grant summary judgment on their claim of

cybersquatting.  "[C]ybersquatting is the act of registering, in bad faith and to garner profit, on

the internet a domain name so similar to a distinctive mark that it is confusing."  *Green v.*

*Fornario*, 486 F.3d 100, 103 n.5 (3d Cir. 2007).  In determining whether a mark possesses the

requisite degree of recognition, the court may consider all relevant factors, including the

following:

> (i) The duration, extent, and geographic reach of advertising and
> publicity of the mark, whether advertised or publicized by the
> owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods
> or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered under the Act of March 3,
> 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2).

Defendants submit to the Court that Artofex Machines is listed as the owner of the

domain name www.artofex-usa.com.  (Def. Mot. at 33.)   According to Defendants, the

distinctiveness of the mark has been established because it "has been federally registered on the

Principal Register since 1927, and has been in use in the United States and worldwide for over 90

years."  (*Id.*)  Defendants add that the USPTO records reveal no other applications or

registrations for the term ARTOFEX other than those initiated by the parties to this case, and

note that the ARTOFEX mark has long been recognized in the industry.  (*Id.*)

Turning to the issue of bad faith, Defendants contend that many of the factors in the case

25

at bar point towards a finding of bad faith on Plaintiffs' part.  Indeed, Defendants allege that

Plaintiffs attempted to improperly divert consumers by using the ARTOFEX mark without

permission and that they misappropriated the former Excelsior phone number.  (*Id.*)  Moreover,

Defendants suggest that Plaintiffs "tried to conceal the identify of the owner of the domain name,

as the current registrant, Artofex Machines[,] is admittedly no longer an active corporation."  (*Id.*

at 33-34.)

       Plaintiffs respond that Defendants cannot prevail on their cybersquatting claim.  (Pl.

Opp'n at 11.)  First, Plaintiffs reiterate the argument that the ARTOFEX mark has been

abandoned and thus no longer possesses the distinctive quality of a trademark necessary for a

cybersquatting claim.  (*Id.* at 12.)  Second, Plaintiffs submit that Defendants have failed to

establish bad faith on their part.  (*Id.*)  Indeed, Plaintiffs claim that "Defendants fail[ed] to point

out that the [Plaintiffs'] website corresponding to the Domain Name was never functional," and

that the website clearly indicated at all relevant times that it was still "Under Construction."  (*Id.*

at 12-13.)  According to Plaintiffs, no product or service related to the mark has ever been

offered for sale on the website.  (*Id.* at 13.)  Finally, Plaintiffs maintain that they are shielded

from liability for cybersquatting because they held a reasonable belief that the use of the domain

name was fair and lawful.  (*Id.*)

       Viewing all evidence in the light most favorable to non-movants, the Court holds that

there remain genuine issues of material fact as to Defendants' cybersquatting claim.  As

explained above, there remain genuine issues of material fact concerning the question of

ownership and abandonment of the '276 Mark.  Moreover, the issue of whether Plaintiffs acted

in bad faith in this case remains an issue of fact that the Court cannot decide at this juncture.  It

necessarily follows that summary judgment on Defendants' cybersquatting claim is inappropriate.

### 4.     Dilution of the ARTOFEX Mark

"The federal cause of action for trademark dilution grants extra protection to strong, well-recognized marks even  in the absence of a likelihood of consumer confusion . . . if the defendant's use diminishes or dilutes the strong identification value associated with the plaintiff's famous mark." *Times Mirror Magazines Inc. v. Las Vegas Sports News*, 212 F.3d 157 (3d Cir. 2000).  To establish a *prima facie* claim for relief under the federal dilution act, the plaintiff must plead and prove that:

> 1. The plaintiff is the owner of a mark that qualifies as a 'famous' mark in light of the totality of the eight factors listed in § 1125(c)(a),
>
> 2. The defendant is making commercial use in interstate commerce of a mark or trade name,
>
> 3. Defendant's use began after the plaintiff''s mark became famous, and
>
> 4. Defendant's use causes dilution by lessening the capacity of the plaintiff 's mark to identify and distinguish goods or services.

*Id.* at 163, *citing*, *inter alia*, *Hershey Foods Corp. v. Mars, Inc*., 998 F. Supp. 500, 504 (M.D. Pa. 1998).

Defendants argue that they have provided sufficient facts to establish the fame of the mark.  Indeed, they highlight Mr. Zinn's alleged acknowledgment that the mark is "world famous." (Def. Mot. at 35.)  Moreover, they reiterate the claims set forth above that the ARTOFEX mark has been in use worldwide since 1911, has been advertised regularly in one of the leading industry publications (Modern Baking), and is clearly distinctive.  (*Id.* at 35-36.)

Under the circumstances, they conclude that "[u]nder New Jersey law and common law, the undisputed facts show summary judgment should issue in favor of Defendants on the claim of dilution (Counts VII and VIII of the federal action)."  (*Id.* at 35-36.)

Plaintiffs once again respond that Defendants' claims cannot stand because they do not own the ARTOFEX mark.  (Pl. Opp'n at 13.)   Moreover, Plaintiffs contest Plaintiffs' characterization of the mark as one that is "famous" for purposes of 15 U.S.C. § 1125(c), claiming that it was only purchased for $5,000 from Aeschbach.  (*Id.* at 14.)  Plaintiffs further submit to the Court that AEW was the legitimate owner of the mark, and that Ms. Seruga cannot therefore have been a *bona fide* purchaser of the mark.  (*Id.*)  Finally, Plaintiffs suggest that the machinery bearing the ARTOFEX mark has become obsolete, and that demand for such machinery has declined so much that it now operates only in a very limited market.  (*Id.*) Plaintiffs conclude that, under the circumstances, "[t]here is no likelihood of confusion giving rise to dilution of an invalid mark."  (*Id.*)

Viewing all evidence in the light most favorable to non-movants, the Court holds that there remain genuine issues of material fact with respect to Defendants' claims of dilution of the ARTOFEX mark.  As explained above, there remain genuine issues of material fact concerning the ownership and purported abandonment of the '276 Mark.  Moreover, even if Defendants were rightful owners of the '276 Mark at all relevant times there remains a factual dispute as to whether the mark is "famous", which would render summary judgment inappropriate.

5.       Breach of Contract and Interference With Prospective Business Advantage

A party seeking to establish a breach of contract claim under New Jersey law must allege

that: "1) a contract existed, 2) a breach of that contract occurred, 3) damages resulted therefrom, and 4) the movant performed its own contractual duties." *Zinn v. Seruga*, No. 05-3572, 2006 U.S. Dist. LEXIS 51773, at *28 (D.N.J. July 28, 2006), *citing*, *inter alia*, *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002). A party claiming tortious interference with a prospective business advantage, on the other hand, must establish: "1) a prospective economic relationship from which the plaintiff has a reasonable expectation of gain; 2) intentional and unjustifiable interference with that expectation, and 3) a causative relationship between the interference and the loss of the prospective gain." *Cooper Distrib. Co. v. Amana Refrigeration*, 63 F.3d 262, 281 (3d Cir. 1995), *citing Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739 (N.J. 1989).

Defendants contend that they have established the elements of a successful breach of contract claim because Judge Escala has allegedly found that Plaintiffs' acts constituted a breach of the CSA. (Def. Mot. at 36.) In particular, Defendants submit that Mr. Zinn has breached the CSA by :

- representing himself to be the successor to Excelsior

- using the Excelsior phone number

- using the ARTOFEX mark without permission from the owner

- unfairly competing with Ms. Seruga by telling customers that she had passed away and that ARTOFEX products were no longer available.

(*Id.* at 36-37.) Defendants conclude that they are therefore entitled to summary judgment on the claim of breach of contract.

Turning to the claim of interference with a prospective business advantage, Defendants

29

submit that Ms. Seruga and Excellent were the only authorized sellers of new ARTOFEX products in the United States, and that it was therefore reasonable for them to assume that the former clients of Excelsior would continue to purchase ARTOFEX machinery – or at the minimum, replacements parts – from them.  (*Id.* at 38.)   Moreover, Defendants claim that they have successfully established that Plaintiffs acted with malice in suggesting to potential clients that Ms. Seruga was dead and by using the Excelsior phone number.  (*Id.* at 38-39.)  Defendants suggest that Mr. Zinn's "pattern of behavior from the mid-90s has been deliberately geared towards harming his ex-wife and her business."  (*Id.* at 38.)

Plaintiffs, however, maintain that Defendants cannot prevail on their breach of contract and interference with prospective business advantage claims.  (Pl. Opp'n at 14.)  As a threshold matter, Plaintiffs insist that "[c]learly, and contrary to Defendants' assertions, there was no adjudication finding that Plaintiffs breached the CSA."  (*Id.* at 15.)   They also claim that the Excelsior phone number was deactivated in 1995, reassigned randomly to unrelated third parties, and then reassigned by chance to Plaintiffs in 1999.  (*Id.*)  According to Plaintiffs, they "had no knowledge that the newly assigned telephone number was the former Excelsior telephone number, until it was brought to their attention by Defendants' attorney."  (*Id.*)

Plaintiffs also submit that Defendants cannot legitimately claim that Plaintiffs breached the CSA when Defendants themselves allegedly breached it first.  Indeed, Plaintiffs contend that Defendants breached Subsection 3(c) of the CSA by "sending corporate spies to Plaintiffs' premises to misrepresent themselves as customers, in attempts to entrap Plaintiffs."  (*Id.* at 16.) Plaintiffs add that Defendants' actions amounted to a breach of Subsection 3(d) of the Agreement, noting in particular the contents of the Excellent website, which they describe as a

"masterpiece of disparagement".  (*Id.* at 17.)

Finally, Plaintiffs submit that Defendants' request for summary judgment on these claims must fail because "Defendants have not offered any proof that they have been damaged."  (*Id.* at 18.)  Indeed, Plaintiffs allege that "Excellent's sales went up over $500,000 in 2005," and that "[e]ven if Defendants theoretically incurred damages, such damages would be *de minimus* since [ARTOFEX] products constitute a small percentage of the parties' sales."  (*Id.*)

Viewing all allegations in the light most favorable to non-movants, the Court holds that there remain genuine issues of material fact with respect to Defendants' claims of breach of contract and interference with prospective business advantage.  In particular, the allegations fail to elucidate whether Plaintiffs or Defendants were the first ones to breach the CSA (and indeed whether it was breached at all), and raise issues of fact as to whether Plaintiffs' behavior constituted an intentional interference with a business expectation.

6.      Fraud

"Fraud is defined as: (1) a material misrepresentation of present or past fact; (2) knowledge of its falsity; (3) intention that the other party rely thereon; and (4) reasonable reliance by the other party."  *Asen v. Cooper Hospital/Univ. Medical Ctr.*, No. 95-869, 1996 U.S. Dist. LEXIS 8680, at **17-18 (D.N.J. June 7, 1996), *citing Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1182 (3d Cir. 1993).

Defendants submit that Mr. Zinn is liable for fraud because he allegedly breached several clauses of the CSA.  (Def. Mot. at 39.)  They claim that Mr. Zinn's early correspondence with Mr. Kolb  demonstrates that he "had no intention of honoring the terms of any agreement, and that he falsely represented his position in negotiating and signing the [CSA]."  (*Id.*)  Defendants

submit that Ms. Seruga relied on the Mr. Zinn's representation that he would abide by the terms of the CSA, and that she has been injured by his failure to comply with its terms.  (*Id.* at 39-40.)

Plaintiffs respond that Defendants have utterly failed to meet their burden of establishing reliance in this matter.  (Pl. Opp'n at 19.)  Moreover, Plaintiffs suggest that both parties have accused the other of breaching the CSA, and that it would be inappropriate for the Court to adopt Defendants' contested characterization of the facts at this stage in the litigation.  (*Id.* at 20.)

The Court held above that there remained genuine issues of material fact as to which party first breached the CSA, if the CSA was breached at all.  Under the circumstances, the Court cannot grant summary judgment in connection with Defendants' claim of fraud.

D.     Defendants' Cross-Motion for Summary Judgment

Defendants' cross-motion for summary judgment largely mirrors their motion for summary judgment, which the court resolved above.   The Court has held that there remain genuine issues of material fact as to whether the '276 Mark was abandoned and whether said mark was properly assigned to Ms. Seruga.  The only new issue set forth in Defendants' cross-motion is that of estoppel.  Indeed, Defendants contend that Plaintiffs are estopped from raising the federal claims that are the subject of their motion because those claims were compulsory counterclaims not raised in the prior state proceeding.  (Def. Opp'n at 38.)  Defendants explain that "Plaintiffs' unauthorized use of the ARTOFEX mark was pleaded in the state case and Plaintiffs did not raise any issue about the invalidity of the mark based on genericness, abandonment or lack of quality control, and none of these defenses should be permitted years later after . . . extensive discovery."  (*Id.* at 39.)

Plaintiffs contest Defendants' assertions.  They insist that the "critical fact" is that "the

previous state court proceeding was not resolved prior to the consolidation."  (Pl. Reply at 8.)

Plaintiffs conclude that they "could have easily amended their Answer and Counterclaims in the

State court proceeding to include the present claims, but it was not necessary since the parties

agreed to consolidate the actions."  (*Id.*)

The Third Circuit has held that the doctrine of "claim preclusion provides that a final

judgment on the merits of an action precludes the parties or their privies from relitigating issues

that were or could have been raised in that action." *Walzer v. Muriel, Siebert & Co.*, 221 Fed.

App'x 153, 156 (3d Cir. 2007), *citing Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.

1997).   In the case at bar, the state action and the instant action were consolidated before the

State court had an opportunity to reach a final judgment on the merits.  Plaintiffs are therefore

not estopped from setting forth before this Court claims or defenses that they could – but did not

– raise in that action.

**CONCLUSION**

For the foregoing reasons, the Court will deny Plaintiffs' motion for summary judgment,

deny Defendants' cross-motion for summary judgment, and deny Defendants' motion for

summary judgment.  An appropriate form of Order accompanies this Opinion.

Dated: February 19, 2008

          s/ Garrett E. Brown, Jr.
          GARRETT E. BROWN, JR., U.S.D.J.